354

In the Matter of CIRCUS DISCO LTD., Doing Business as THE ELECTRIC CIRCUS, Respondent, v NEW YORK STATE LIQUOR AUTHORITY, Appellant.

First Department, April 8, 1980

**APPEARANCES OF COUNSEL**

*Joseph S. Ryan* of counsel *(Warren B. Pesetsky, attorney),* for appellant.

*Andrew S. Fisher* of counsel *(Harold L. Fisher* and *Gerald Gorinsky; Fisher & Fisher,* attorneys), for respondent.

### OPINION OF THE COURT

FEIN, J.

Petitioner applied for a special on-premises liquor license (theatre or entertainment) for what was to be one of the largest discotheques in New York City. Originally intended to be open only to members and their guests (at $200 annual membership), the premises were to consist of 22,000 square feet of floor space spread over three dance floors, each with its own bar. Also to be featured were a game room, V.I.P. lounge, and a carousel replete with "original steeplechase horses", as well as the latest in disco sound systems. The premises would accommodate more than 1,400 at one time, although seating capacity would be lmited to 250. The location of this operation is 100 Fifth Avenue, at the corner of 15th Street in Manhattan's Chelsea district. Although zoned commercially, the neighborhood has a substantial residential population which is expanding, via loft conversion and the like.

The New York City Alcoholic Beverage Control Board recommended approval of the liquor license application only on condition that the disco be open to the general public rather than operated as a private club. The authority rejected the application outright on November 15, 1978, after considering among other matters, substantial evidence of public opposition led by local community and political leaders. The authority noted that the immediate neighborhood, within a one-block radius of the premises, included a church, a school and several residences, some of which are havens for the elderly. In the authority's view, the noise pollution and vehicular congestion, lack of parking facilities and the pedestrian congestion generated by this operation would pose a threat to the welfare and stability of this essentially residential neighborhood. Thus the licensing of sale of alcoholic beverages for on-premises consumption would be neither in furtherance of "public convenience and advantage" nor "conducive to proper regulation and control". The authority further noted that none of the principals involved in petitioner's large scale enterprise had any experience in this type of operation.

On reconsideration, the authority reiterated its prior reasoning in a second ruling on February 7, 1979, adding that this neighborhood was ill-equipped to handle the congestion

anticipated by the magnitude of petitioner's operation. The authority further took cognizance of recently disclosed financial data indicating that petitioner had failed to inform the authority of a substantially greater investment in the premises ($460,153) than contained in the original application, as amended ($167,000). Such concealment was found to be a violation of the authority's rules and regulations.

The State Liquor Authority stated:

"The Authority also notes that the community is and has been struggling to alleviate serious safety problems. The type of operation planned by the applicant would tip the balance against the neighborhood and be disruptive of the style of life there, incompatible with the right of local residents to the peaceful enjoyment of their community.

"For the foregoing reasons, the Authority finds that public convenience and advantage would not be promoted by the approval of this application for premises licensed to sell alcoholic beverages for on-premises consumption in this area and that approval of this application would not be conducive to proper regulation and control."

Special Term dismissed the matter of "concealment" of expenses as not part of the record originally before the authority, and ruled, essentially, that petitioner had complied with all the prerequisites for an on-premises liquor license, that objections at this point were merely speculative, and that the authority and the community would have their remedies should the operation become a public nuisance. Special Term disagreed with the authority's opinion that approval of petitioner's application would pose "a threat to the objectives of alcoholic beverage control or to the welfare of the community", calling such opinion "arbitrary and capricious".

"It is settled that the courts will not disturb the exercise of administrative discretion vested in the State Liquor Authority by the Alcoholic Beverage Control Law unless the action complained of be deemed arbitrary or capricious." *(Matter of Fiore v O'Connell,* 297 NY 260, 262.) "It may not be said that a reasonable basis does not appear in this record upon which the authority could have reached its decision. The court may not substitute its judgment for that of the board empowered by statute to exercise discretion in carrying out the purposes of section 2 of the Alcoholic Beverage Control Law." *(Matter of Glintenkamp v O'Connell,* 271 App Div 795, affd 296 NY

806.) In short, the determination of the authority should be sustained as long as there is any reasonable basis for it *(Matter of Wager v State Liq. Auth.,* 4 NY2d 465, 468; *Matter of Gambino v State Liq. Auth.,* 4 AD2d 37, affd 4 NY2d 997). As those cases hold, the burden is on the petitioner to show that the circumstances are such as to leave no possible scope for the exercise of the authority's discretion in the manner of which petitioner complains *(Matter of Stracquadanio v Department of Health,* 285 NY 93, 96).

On this record petitioner has failed to make the requisite showing that the authority's action was arbitrary and capricious and without reasonable basis. The authority was entitled to consider petitioner's lack of experience in supervising the dispensing of intoxicating beverages for on-premises consumption *(Matter of 1522-1526 Second Ave. Rest. v State Liq. Auth.,* 31 AD2d 534; see, also, *Matter of Camuglia v Rohan,* 9 NY2d 745, 746-747), particularly in light of the documented expressions of sensitivity to petitioner's presence in this community. This is especially crucial in such a large scale operation as anticipated by petitioner *(Matter of Soul Scene v State Liq. Auth.,* 35 AD2d 574). Of the 10 principals in petitioner's enterprise, 8 are comprised of attorneys, a film editor, a letter carrier, a jewelry salesman and a perfume manufacturer's executive. Only two have peripheral experience in the business of dispensing intoxicating beverages, having jointly owned a package store. Apprehension as to the proper management and supervision of this large scale dispensing of liquor for on-premises consumption was thus justified, providing an adequate basis for respondent's determination.

Experience and financing are relevant considerations. The authority was entitled to consider the questions raised as to the financing of petitioner, the sources thereof, and the record keeping and disclosure of the sources and amounts expended *(Matter of 1522-1526 Second Ave. Rest. v State Liq. Auth., supra).*

Equally relevant were the considerations of the community and its needs, and the impact of the prospective licensee on the community *(Matter of Gambino v State Liq. Auth., supra; Matter of Soul Scene v State Liq. Auth., supra).* In this regard, subdivision 7 of section 100 of the Alcoholic Beverage Control Law requires that during the pendency of an application for an on-premises liquor license, a notice of such application must be conspicuously posted near the entrance to the prem-

ises. Presumably this is to call this development to the attention of the community and invite its response.

Accordingly, it was error for Special Term to substitute its judgment for that of the administrative agency *(Matter of Fiore v O'Connell* 297 NY 260, *supra),* and the judgment of the Supreme Court, New York County (MARKS, J.), entered May 29, 1979, should be unanimously reversed, on the law, without costs and without disbursements, the petition dismissed, the temporary stay of New York State Liquor Authority's determination vacated and the authority's determination reinstated.

Ross, MARKEWICH and CARRO, JJ., concur.

Judgment, Supreme Court, New York County, entered on May 29, 1979, reversed, on the law, without costs and without disbursements, and vacated, the petition dismissed, the temporary stay of New York State Liquor Authority's determination vacated, and the authority's determination reinstated.